FILED ✓     LODGED
RECEIVED     COPY

AUG 1 3 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M DEPUTY

1   SOANE TUITA, Plaintiff
    TUPOU TUITA, Plaintiff
2   825 W. Monterey Place,
    Chandler Arizona 85225
3   (480) 254-1781

4

5                 IN THE UNITED STATES DISTRICT COURT

6                          STATE OF ARIZONA

7
    SOANE TUITA, a married man,          )   Case No.:    CV-12-1721-PHX-JAT
8   TUPOU TUITA, A married woman,        )
9              Plaintiff,                )
                                         )   VERIFIED COMPLAINT FOR DAMAGES
10             vs.                       )
11  WELLS FARGO BANK N.A., as successor in )  TRIAL BY JURY OF TWELVE
    interest to WORLD SAVINGS BANK FSB;  )   DEMANDED
12  MTC FINANCIAL INC, d/b/a/ TRUSTEE    )
    CORPS, DOES 1-100 INCLUSIVE, any     )
13  assigns, unknown parties;            )
                                         )
14             Defendant(s)              )

15

16          COMES NOW the Plaintiff's Soane and Tupou Tuita ("Plaintiff's), complaining of

17  the Defendants, and each of them, as follows:

18

19                              **INTRODUCTION**

20      1.      This is an action brought by Plaintiffs for declaratory judgment, injunctive and

21  equitable relief, and for compensatory, special, general and punitive damages.

22      2.      Plaintiffs,  homeowners, disputes the title and ownership of the real property in

23  question located at 825 W. Monterey Place, Chandler Arizona 85225, as more particularly

24  described in Exhibit "A" attached hereto and by this reference made a part hereof (the

25

26  "Property"), which is the subject of this action, in that the originating mortgage lender, and

27  others alleged to have ownership, have unlawfully sold, assigned and/or transferred their

28

ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in the Property which is described in detail herein.

3.  Plaintiffs allegedly obtained a mortgage loan from Worlds Savings Bank on or about March 6, 2007, in the amount of $248,000.00.

4.  Plaintiffs alleges that he owns the Property in fee simple, with all rights and appurtenances thereto, and free of any claims or encumbrances alleged by Defendants.

5.  Plaintiffs alleges that Defendant, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

6.  Plaintiffs further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property.  Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

7.  Plaintiffs alleges that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them.  Plaintiffs desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

8.  Plaintiffs also seeks redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a.  An invalid and unperfected security interest in Plaintiffs's Property hereinafter described;

b.  An incomplete and ineffectual perfection of a security interest in Plaintiff's Property;

c.  A void or voidable Deed of Trust, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

### THE PARTIES

9.  Plaintiff(s) is now and at all times relevant to this action, a resident of the County of MARICOPA, State of ARIZONA.

10.  Defendant "WELLS FARGO BANK N.A.", ("WELLS") is a national bank licensed to do business in the State of California and has a corporate office at 420 Montgomery Street San Francisco, CA 94104. Wells Fargo Bank N.A., claims an interest in Plaintiff property as a beneficiary.

11.  Defendant "MTC FINANCIAL INC' doing business as Trustee Corps ("MTC") as Trustee upon information and belief is a California corporation who principle place of business is 17100 Gillette Avenue, Irving California 92614.

12.  At all times relevant to this action, Plaintiff has owned the Property located at 825 W. Monterey Place, Chandler Arizona 85225 (the "Property").

13.  Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the

fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

14.   Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## JURISDICTION

15.   The US District Court has jurisdiction pursuant to 15 USC 1692¶ ,28 USC§ ¶1332, ¶1331.

16.   This court has jurisdiction pursuant to 28 USC§ 1441, where the amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

17.   Plaintiff executed a series of documents, including but not limited to a Note and Deed of Trust (*see,* attached Exhibit A) securing the Property in the amount of note.

18.   Plaintiff informed and believes, and thereon alleges, that they entered into a mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiff in favor of the original lender World Savings Bank on March 6, 2007.

19.   On or about April 12, 2012, defendant Wells caused to be filed a Substitution of Trustee (*see*, attached Exhibit B) in the Maricopa County Recordee office, described as Document Number 20120408280 . This documents purports to substitute defendant MTC Financial as Trustee.

20.   On or about May 4, 2012 defendant "MTC" caused to be filed an Notice of Trustee Sale in the Maricopa County Recorders Office (*see*, attached Exhibit C) described as Document Number

2012040821.

21. Upon information and belief World Savings Bank was purchased by Wells Fargo in 2008. Upon information and belief, Worlds Savings attempted securitization of the Plaintiffs loan in April of 2007. World Savings Bank securitized nearly all of their loans, as well Plaintiff has obtained evidence the same occurred with their loan.

22. Upon information and belief Wells only inherited servicing rights of Plaintiff's loan, not ownership of the Plaintiffs promissory Note as defendants claim.

23. There is no evidence of an Assignment of mortgage documenting the ownership claims of the defendants.

24. Plaintiff has never received documentation evidencing a sale or negotiation of the Plaintiff's Note.

25. Defendants Wells, did violate 15 U.S.C.§1641(g), which requires notification of the borrower within 30 days of any transfer or assignment of their mortgage loan to a third party.

Specifically § 1641(g) states:

(g) Notice of new Creditor

(1) **In general**

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including;

(A). the identity, address, telephone number of the new creditor;
(B). the date if transfer;
(C). how to reach an agent or party having authority to act on behalf of the new creditor;
(D). the location of the place where transfer of ownership of the debt is recorded; and
(E). any other relevant information regarding the new creditor.

(2) **Definition**

TUITA COMPLAINT FOR DAMAGES

As used in this subsectionm the term" mortgage loan" means any consumer credit transaction that is secured by the principle dwelling of a consumer. 15 U.S.C.§ 1641(g).

26. Wells failed to provide to Plaintiffs, disclosures required by TILA Section 1641(g).

### FIRST CAUSE OF ACTION
### QUIET TITLE
### (Against All Defendants and Does 1-100)

27. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

28. Plaintiff is credibly informed and believes that Defendants claim an interest or interests in the Property that are adverse to Plaintiff's fee simple title to the Property.

29. Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Property and quieting Plaintiff's title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem valid and avoiding any liens or encumbrances upon the Property created by Defendants or by their putative predecessors, or by any of them.

30. Plaintiffs desires and is entitled to a judicial declaration quieting title in Plaintiffs as of the date on which is loan transaction was consummated.

31. Plaintiffs verifies the truth of the allegations contained herein for the purpose of complying with the requirement set forth in ARS §12-1102 that a Complaint for Quiet Title be given under oath. Plaintiff's Verification Under Oath is attached hereto and by this reference made a part of this Complaint.

32. Plaintiffs moves this court to require the defendant to provide the genuine, original Note to Plaintiff as proof that is it the true party to which the debt is owed, so that Plaintiffs could tender payment, and or satisfy the mortgage.

## SECOND CAUSE OF ACTION
## VIOLATION OF 15 U.S.C.§1641(g)
## TRUTH IN LENDING ACT

33.  Plaintiffs reallege the allegations above as if fully set out herein.

34.  With respect to Plaintiffs, Wells alleges to have received by assignment a beneficial interest in their mortgage and note.

35.  Wells alleges it is a "creditor" within the meaning of 15 U.S.C. §1641(g).

36.  Said mortgage secures an interest in real estate which is used by Plaintiffs as their principle dwelling, such transfer, within 30 days, and make all the disclosures set out above.

37.  Wells failed to notify Plaintiffs at all and therefore failed to make the requisite disclosures.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT CREDIT PRACTICES ACT

38.  Defendant Wells is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant's is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6). Defendants violated the FDCPA. Defendants' violations include, but are not limited to the following;

(a) Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt and;

(b) Defendant violated §1692(d)(5) of the FDCPA by causing a telephone to ring engaging any person in telephone conversation repeatedly and/or continuously with the intent to annoy, abuse or harass any person at the called number and;

(c) Defendant violated §1692(j) of the FDCPA by using unfair or unconscionably means in connection with the collection of an alleged debt;

(d) Defendant violated 1692(e) using false, deceptive, or misleading misrepresentations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e, and;

(e) using unfair or unconscionable means to collect or attempt to collect a debt, in

violation of 15 U.S.C. §1692f;

(f) Defendant violated the 1692(e)(8) requires debt collectors to communicate the disputed status of a debt if the debt collector 'knows or should know' that the debt is disputed,  standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is "acquired."

39. Defendant's acts as described above were done intentionally with the purpose of coercing the Plaintiff's to pay the alleged debt.

40.    As a result of the foregoing violations of the FDCPA, Defendant is liable to the Plaintiff, for declaratory judgment that Defendant's conduct violated the FDCPA, actual damages, statutory damages, and costs and fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests the following relief to be awarded for each Cause of Action:

1. That this Court establish Plaintiff's estate in fee simple in the Property and that Defendants be barred and forever estopped from having or claiming any right or title to the Property adverse to Plaintiff;

2. For Declaratory Relief, including the following Decrees of this Court that:

   a.  Plaintiff is the prevailing party;

   b.  The Mortgage Originator has no enforceable secured or unsecured claim against the Property; and

   c.  For judgment for statutory damages, costs and fees pursuant to 15 U.S.C.§1641(a);

   d.  declaratory judgment that Defendant's conduct violated the FDCPA;

   e.  actual damages.

TUITA COMPLAINT FOR DAMAGES

- 8 -

f.   statutory damages of $1000.00 per violation of law pursuant to  15 U.S.C. §1692k.

g.   costs and fees pursuant to 15 U.S.C. §1692k.

h. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law.

SUCH OTHER RELIEF AS THIS COURT MAY DEEM APPROPRIATE.

Dated: August 13, 2012

_____

SOANE TUITA, Plaintiff

_____

TUPOU TUITA, Plaintiff

### VERIFICATION

We verify that we have read the information contained herein and certify that the contents of this Complaint represent the facts as we know it to be.

_____

SOANE TUTITA

_____

TUPOU TUTITA

### EXHIBIT A

### DEED OF TRUST

TUITA COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUITA COMPLAINT FOR DAMAGES

OFFICIAL RECORDS OF

**Unofficial**
**Document**

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

When recorded return to:      (FT)
Custom Title Solutions 3250497
2550 N. Redhill Avenue    20053
Santa Ana, CA 92705
(800) 756-3524 ext. 5754 or 5996

LOAN NUMBER:0045403805

NOTE AMOUNT: $248,000.00

3250497-Kz                          FOR RECORDER'S USE ONLY

### DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL
BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S
OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$310,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

I.      **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
        **(A)    Security Instrument.** This Deed of Trust, which is dated **March 6, 2007** will be called the
"Security Instrument."

        **(B)    Borrower.** SOANE TUITA AND TUPOU TUITA, HUSBAND AND WIFE  sometimes will be
called "Borrower" and sometimes simply "I" or "me."

        **(C)    Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be
called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the
United States. Lender's address is  **1901 Harrison Street, Oakland, CA 94612** .

        **(D)    Note.** The note signed by Borrower and having the same date as this Security Instrument,
including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note
shows that I owe Lender the original principal amount of U.S.  **$248,000.00** ("Note Amount"), plus accrued and
deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly
scheduled periodic payments as provided in the Note and to pay the debt in full by **April 1, 2037** ("Maturity
Date").

        **(E)    Property.** The property which is located at **825 W MONTEREY PL, CHANDLER, AZ
85225-4458** will be called the "Property" or the "Described Property." The legal description of the Property
is attached as Exhibit "A" which is made a part of this Security Instrument.

        **(F)    Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of
Rights in the Property" sometimes will be called the "Sums Secured."

        **(G)    Person.** Any person, organization, governmental authority or other party will be called "Person."

        **(H)    Trustor, Beneficiary, Trustee.** Borrower is the "Trustor,"
Lender is the "Beneficiary" and **Golden West Savings Association
Service Co., A California Corporation,  4101 Wiseman Boulevard, San
Antonio, Texas 78251** is the "Trustee."



SD003A (2004-12-3)                        Page 1                    AZ
DEFERRED INTEREST                                                              LENDER'S USE ONLY

TUITA COMPLAINT FOR DAMAGES

20070340950

**II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**                                                0045403805
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Covenants 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

**III.    DESCRIPTION OF THE PROPERTY**
I give Trustee rights in the Property described below:

(i)    The Property as defined in Section I(E) above;

(ii)    All buildings and other improvements that are located on the Described Property;

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;    Unofficial Document

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the Property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Covenant 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS (PROMISES AND AGREEMENTS)**

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**
    (A)    Borrower's Obligations
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD003B (2004-12-3)                                Page 2                                        AZ

TUITA COMPLAINT FOR DAMAGES

20070340950

0045403805

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all Sums Secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all Sums Secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Covenant 27, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the Sums Secured by this Security Instrument.

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Covenants 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;
Second, to pay any advances due to Lender under this Security Instrument;
Third, to pay the amounts due to Lender under Covenant 2 above;
Fourth, to pay interest due under the Secured Notes;
Fifth, to pay deferred interest due under the Secured Notes;
Sixth, to pay principal due under the Secured Notes;
Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Covenant 2 above or by making the payments on time to the Person owed them.

SD003C (2004-12-3)                    Page 3                              AZ

**TUITA COMPLAINT FOR DAMAGES**

20070340950

0045403805

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgage Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Covenants 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Covenant 27 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and

TUITA COMPLAINT FOR DAMAGES

20070340950

0045403805

directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7.      LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**
        If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Covenant 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Covenant 7, Lender does not have to do so. Any action taken by Lender under this Covenant 7, will not release me from my obligations under this Security Instrument.

        I will pay to Lender any amounts which Lender advances under this Covenant 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Covenant 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.      LENDER'S RIGHT TO INSPECT THE PROPERTY**
        Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.      AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**
        I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

        If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

        If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

        If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Covenants 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
        **(A)     Borrower's Obligations**
        Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

        Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

SD003E (2004-12-3)                          Page 6                                                    AZ

TUITA COMPLAINT FOR DAMAGES

- 15 -

20070340950

0045403805

**(B)    Lender's Rights**
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Covenant 27 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Sums Secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**
If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **825 W MONTEREY PL, CHANDLER, AZ 85225-4458**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Excepted as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Covenant 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**
This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession

SD003F (2004-12-4)                      Page 6                      AZ

TUITA COMPLAINT FOR DAMAGES

20070340950

0045403805

of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Covenant 16, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Covenant 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Covenant 16, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**17.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**
An **assignment** is a transfer of rights to another. I may have rights to bring legal action against Persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sums Secured after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**18.     CLERICAL ERRORS**
In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, ~~computer~~ error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**19.     LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**20.     WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**21.     CAPTIONS**
The captions and headings at the beginning of each Section of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**22.     MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**23.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of Incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

SD003G (2004-12-3)                                    Page 7                                    AZ

TUITA COMPLAINT FOR DAMAGES

- 17 -

20070340950

0045403805

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Covenant 23 according to the terms described in Covenant 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master or blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master or blanket** policy, then: (i) Lender waives the provision in Covenant 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Covenant 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master or blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**24.     FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**25.     AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

THIS SPACE INTENTIONALLY LEFT BLANK.

TUITA COMPLAINT FOR DAMAGES

20070340950

0045403805

THIS SPACE INTENTIONALLY LEFT BLANK.

**26.   SUBSTITUTION OF TRUSTEE**
    I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

**27.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**
    It will be called a "Breach of Duty" if: (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all Sums Secured.

    If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under any applicable law, and invoke such other remedies as may be permitted under any applicable law.

    Lender does not have to give me notice of a Breach of Duty unless notice is required by applicable law. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

    If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the applicable law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

    The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the applicable law. If the Property is sold under the applicable law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the applicable law limits or prohibits any such charges.

    Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**28.   RELEASE**
    Upon payment of all Sums Secured by this Security Instrument, Lender shall release this Security Instrument and all Secured Notes. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**29.   STATEMENT OF OBLIGATION**
    To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD003i (2004-12-3)      [I01 (2006-08-1)]                        Page 9                                                    AZ

TUITA COMPLAINT FOR DAMAGES

- 19-

20070340950

0045403805

**30.    ( X  )  QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**31.    ( X  )  OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**( X  )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

Unofficial Document

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD003J (2004-12-3)    (J01 (2006-08-1))                    Page 10                                    AZ

TUITA COMPLAINT FOR DAMAGES

20070340950

0045403805

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records. Additionally, I acknowledge the receipt of one conformed copy of the Secured Notes and this Security Instrument.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____   (Seal)
SOANE TUITA

_____   (Seal)
TUPOU TUITA

Unofficial Document

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD003 (2004-03-1)                                        Page 11                        AZ
                        [ML1 (2004-03-1)]

TUITA COMPLAINT FOR DAMAGES

20070340950

STATE OF *Arizona*

COUNTY OF *Maricopa*

On *March 15, 2007* before

Me, *Dana Thomas* _____ Notary Public

Personally Appeared      SOANE TUITA AND TUPOU TUITA

~~Personally known to me~~ (or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in ~~his/her~~/their authorized capacity (ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public



(This area for notarial seal)

Unofficial Document

20070340950

APN: 302-49-041

Order ID: 3250497
Loan No.: 0045403805

**EXHIBIT A**
**LEGAL DESCRIPTION**

The land referred to in this policy is situated in the State of AZ, County of MARICOPA, City of CHANDLER and described as follows:

Lot 37, Sunnycrest Subdivision, Unit One, according to Book 106 of Maps, Page 44, records of Maricopa County, Arizona.

APN 302-49-041
WITH THE APPURTENANCES THERETO.
APN: 302-49-041

Unofficial Document

TUITA COMPLAINT FOR DAMAGES

EXHIBIT B

SUBSTITUTION OF TRUSTEE

TUITA COMPLAINT FOR DAMAGES

OFFICIAL RECORDS OF

Unofficial
Document

5

RECORDING REQUESTED BY:


WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614


Trustee Sale No. AZ08000418-12-1          APN 302-49-041 7          Title Order No. 120123670-AZ-LMI
Property Address: 825 W MONTEREY PL, CHANDLER, AZ 85225-4458

## SUBSTITUTION OF TRUSTEE

WHEREAS, SOANE TUITA AND TUPOU TUITA, HUSBAND AND WIFE was the original Trustor(s), GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION was the original Trustee and WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES was the original Beneficiary under that certain Deed of Trust dated March 6, 2007 and recorded on March 22, 2007 as Instrument No. 20070340950 of official records in the Office of the Recorder of Maricopa County, Arizona and described as follows:

LOT 37, SUNNYCREST SUBDIVISION, UNIT ONE, ACCORDING TO BOOK 106 OF MAPS, PAGE 44, RECORDS OF MARICOPA COUNTY, ARIZONA.

The Successor Trustee appointed herein qualifies as Trustee of the Trust Deed in the Trustee's capacity as a Real Estate Broker as required by ARS Section 33-803 (A) (1);

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust; and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided.

NOW THEREFORE, the undersigned hereby substitutes **MTC FINANCIAL INC. dba Trustee Corps** whose address is 17100 Gillette Ave, Irvine, CA 92614.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _____1-26-12_____          **Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Bank Southwest, N.A. FKA Wachovia Mortgage, FSB FKA World Savings Bank, FSB**
By Trustee Corps as Attorney in Fact

By: Rande Johnsen, Director


TUITA COMPLAINT FOR DAMAGES

- 25 -

20120408280

Trustee Sale No. AZ08000418-12-1          APN 302-49-041 7          Title Order No. 120123670-AZ-LMI
Property Address: 825 W MONTEREY PL, CHANDLER, AZ 85225-4458

STATE OF CALIFORNIA
COUNTY OF ORANGE

On ___4.26.12___ before me, ___Claudio Martinez___, Notary Public, personally appeared RANDE JOHNSEN who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_____
Notary Public in and for said County and State

CLAUDIO MARTINEZ
COMMISSION # 1894520
Notary Public - California
"ORANGE COUNTY"
My Comm. Expires Jul. 4, 2014

Unofficial Document

TUITA COMPLAINT FOR DAMAGES

- 26-

1

**EXHIBIT C**
**NOTICE OF TRUSTEE SALE**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUITA COMPLAINT FOR DAMAGES

OFFICIAL RECORDS OF

Unofficial
Document

'5

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

---

| Trustee Sale No. AZ08000418-12-1 | APN 302-49-041 7 | Title Order No. 120123670-AZ-LMI |

## NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust dated March 6, 2007 and recorded on March 22, 2007 as Instrument No. 20070340950 of official records in the Office of the Recorder of Maricopa County, Arizona at public auction to the highest bidder **at the main entrance of the Superior Court Building 201 West Jefferson, Phoenix, AZ on August 16, 2012 at 12:30 PM** on said day.

The street address and other common designation, if any, of the real property described above is purported to be: 825 W MONTEREY PL, CHANDLER, AZ 85225-4458

LOT 37, SUNNYCREST SUBDIVISION, UNIT ONE, ACCORDING TO BOOK 106 OF MAPS, PAGE 44, RECORDS OF MARICOPA COUNTY, ARIZONA.

APN: 302-49-041 7

Original Principal Balance $248,000.00

Name and Address of original Trustor
SOANE TUITA AND TUPOU TUITA, HUSBAND AND WIFE
825 W MONTEREY PL
CHANDLER, AZ 85225-4458

Name and Address of the Beneficiary
Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Bank Southwest, N.A. FKA Wachovia Mortgage, FSB FKA World Savings Bank, FSB
c/o Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Name and Address of Trustee
MTC FINANCIAL INC. dba Trustee Corps
17100 Gillette Ave, Irvine, CA 92614
949-252-8300

TUITA COMPLAINT FOR DAMAGES

20120408281

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note secured by said Trust Deed, which includes interest thereon as provided in said Note, advances, if any under the terms of said Trust Deed, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Trust Deed.

The Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before five o'clock P.M. (5:00 P.M.) on the last day other than a Saturday or legal holiday before the date of sale. The purchaser at the sale, other than the Beneficiary to the extent of his credit bid, shall pay the price bid no later than five o'clock P.M. (5:00 P.M.) of the following day, other than a Saturday or legal holiday

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

Conveyance of the property shall be without warranty, express or implied, and subject to all liens, claims or interest having a priority senior to the Deed of Trust. The Trustee shall not express an opinion as to the condition of title.

DATE: May 14, 2012

Trustee Corps

Rosenda Cardenas, Authorized Signatory

Manner of Trustee qualification:
**Real Estate Broker, as required by ARS Section ~~~~~~~, Subsection A**

Name of Trustee's regulator:
**Arizona Department of Real Estate**

**SALE INFORMATION CAN BE OBTAINED ONLINE AT** www.priorityposting.com
AUTOMATED SALES INFORMATION PLEASE CALL
**714-573-1965**

State of ARIZONA
County of MARICOPA

On this 14th day of May, 2012, before me, **AMBER M. DIAZ** personally appeared **ROSENDA CARDENAS**, whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be, and acknowledged that he or she signed the above/attached document.

Amber M. Diaz, Notary Public
Commission Expires: February 25, 2015



OFFICIAL SEAL
AMBER M. DIAZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 25, 2015

TUITA COMPLAINT FOR DAMAGES

- 29-

## CERTIFICATE OF SERVICE

I, Soane Tuita certify that on August 13, 2012, a copy of the Complaint was served by certified mail return receipt to the defendants listed below.

WELLS FARGO BANK N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

MTC FINANCIAL INC dba TRUSTEE CORPS
17100 Gillette Avenue
Irving, California 92614

SOANE TUITA